Mr. Carroll, you're anxious to get started. I am your honor. Thank you. May it please the court, Mr. Cagle. I'm here representing Jamie Koy. Mrs. Koy, Ms. Koy rather, respectfully asks this court to reverse the Circuit Court's decision of forfeiture for the reason that such forfeiture was an impermissible enhancement of a punishment without a jury trial as disallowed under Apprendi v. New Jersey and is extended by this U.S. Supreme Court's later holding in Southern Union Company. Let me ask you a special question. Neither Southern Union or Apprendi involved civil forfeiture proceedings, correct? They do not, and I admit that. However, I believe that the characterization of civil versus criminal is not really dispositive, and I believe that's found in two cases cited in my brief, U.S. v. Austin and U.S. v. Bakajian. One case involved a civil forfeiture where a person attempted to board a plane with $350,000 in cash, and because he violated the money laundering provision, anti-money laundering provision of $10,000, he was subject to civil forfeiture. There was an Eighth Amendment analysis, though, wasn't there? It was. It was an Eighth Amendment analysis, and part of my argument is it's anomalous to hold that the Eighth Amendment controls forfeiture, but the Fifth Amendment does not, or the Apprendi and Southern Union do not involve civil forfeitures. What they both involved was, in Apprendi, the holding was the jury's, the judge imposed an enhanced sentence beyond that which was found by the jury. In the other case, it was fines. Correct. They stand for the proposition if there's a fining of fact that increases a penalty, be it a sentence or a fine, that has to be done by the fact finder, not by the judge, correct? Correct. It has to be done by the fact finder consistent with the Sixth Amendment. Now, it's important to note that Section 3.04 of the Animal Control Act specifically talks about requiring the prosecution to prove a violation of that act by a preponderance of the evidence, and specifically provides that forfeitures, in addition to any other penalty provided by law, and that's subsection 3 of that act. So that's why I'd like to further respond to your inquiry, Judge Hudson. That's why I feel that the designation of civil versus criminal is not really controlled. So you're saying it's exalting form over substance. I understand that. How do you reconcile the holding in the Libretti case with your arguments here? Because didn't Libretti hold that the Sixth Amendment does not apply to the termination of criminal forfeiture? Absolutely, Libretti did hold that, okay? Libretti also stated, Justice O'Connor's opinion, Libretti also stated that forfeiture operates as a punishment for criminal conduct, not as a separate substantive offense. And it specifically stated that forfeiture does not fall within the Sixth Amendment right to a jury determination of guilt or innocence. However, it also further stated, Justice O'Connor's opinion, that forfeiture is an element of a sentence imposed following a conviction. Congress conceived of forfeiture as punishment for the commission of various drug and racketeering crimes. But that didn't happen here. There was no punishment after conviction. This act allows for the forfeiture independent of any criminal case, does it not? Well, I respectfully disagree, Judge Hudson. I believe that this statute is written to engraft onto criminal punishment, separate punishment, which is the forfeiture of the animals. It's important to know... Was there an additional punishment in addition to the forfeitures of the animals? Yes. The conduct charged here, and Ms. Coy was charged by indictment with eight counts, at least eight counts of animal cruelty. On each count, she faces three years of imprisonment and a $25,000 fine. Right, but the forfeiture is independent of the criminal proceeding. But that's... In other words, they could have forfeited, the forfeiture proceeding could have proceeded, irrespective of whether she was ever charged with anything else, correct? I don't think so, under my reading of this statute. The statute talks about the state proving a violation of the Animal Cruelty Act, and it specifically says that forfeiture is in addition to any other punishment allowed by law. Do you have any cases that say you can't proceed independent? I don't have case law to that effect. However, the statute could have been worded differently, okay? The Legislative General Assembly could have said that if the state proves by a preponderance of the evidence that there's a clear and present danger to the animals, that the, an order of impoundment could be entered. But this is a forfeiture, and the statute uses the language of forfeiture, and it talks about other punishments. And Libretti is very clear that forfeiture is a punishment. As Libretti said, presidents have likewise characterized criminal forfeiture as an aspect of a punishment and post following conviction of a substantive criminal offense. But Libretti also held that there is no right to a jury. Correct, which leads me to Apprendi. And it is directly on point. It's on point, but Apprendi reversed it. Very simply, Apprendi said that anything that enhances punishment does not, must be heard before a jury. There's a Sixth Amendment right to jury on anything that enhances punishment, and Libretti falls right within that analysis, because it talks about forfeiture as punishment. And here we have a statute that talks about forfeiture in addition to any other punishment allowed by law. Let me ask you this. There's a whole line of cases, as you know, there's a plethora of cases in Illinois that say very clearly and unequivocally, civil forfeiture proceedings are not criminal in nature. I believe you do have to overturn that body of law. I believe that if you're going to impose forfeiture, which Libretti said is a punishment, if the state is going to do that, then a person who is facing forfeiture is entitled to a jury trial. They're facing deprivation of property, and they're entitled to a jury trial on that issue. Perhaps not beyond a reasonable doubt, I might concede that in an oral argument, but they're entitled to a jury trial because they're facing deprivation of property. Do you have any cases that hold that, where you're facing deprivation of property, Apprendi and Southern apply? Do you have cases that say that? I don't have that because Southern Union was decided in 2010, and there's only one case that directly addresses Southern Union, Wilkes, which I feel is a poorly reasoned decision. It's not controlling precedent. It's from another circuit, Ninth Circuit, and it's just dismissive. It doesn't really discuss the concepts at all. Do you have any other states that allow jury trials in forfeiture proceedings? I don't know of any. I have not really researched that issue. I concentrated on You also cited a federal case. Is it Fructon? I don't recall. Fructor? Fructor. You don't recall citing that case? I'm sure I did cite it. I just don't recall it offhand. Well, Fructor is a Second Circuit case. It's 2005, so it's well after Apprendi. And it does say that because Libretto has this direct application and is directly on point, that they're bound by Libretto, as opposed to Apprendi. And Southern Union was decided in 2010. Different issue. I'm sorry. Different issue. It's a fine issue, correct? Correct. Eighth Amendment issue. Correct. Not Sixth Amendment. Well, actually, Southern Union, as I understand it, was Sixth Amendment, addressing the issue of fine. The facts in Southern Union are that a probation officer calculated the fine. The district court entered a fine based on that calculation. And Southern Union extended Apprendi to fines. And there's very little difference, in my view, constitutionally, between a fine and forfeiture. They're both economic interests. Here's the problem that I'm having. Here's the disconnect with that argument. In both instances, there was a further fact finding you alluded to that increased the penalty. Did it not? Correct. Apprendi to criminal sentence. Southern, a fine. Right. What was the increase in the forfeiture proceeding in itself? There was a finding the animals would need medical care, and they were seized. Where is the second increase in the section? The deprivation of the animals themselves. And again, I return Isn't that within the forfeiture statute? It is. And the forfeiture statute is written in such a way that it is punitive. That's the central problem of the case. It is a punitive statute. In addition to any other punishments, that's set forth in paragraph C, and it requires the prosecution to prove a violation. If the statute had been worded differently, I would not be here. If the statute said the prosecution proves by a preponderance of the evidence before a summary hearing, a bench trial, or a judge finds clear and present danger to the health of animals, then I would argue the state has a right to seize those animals. But here we have proof of a violation, which is not continuing. At this point, the animals were Well, but the Forfeiture Act is not only written with animals in mind. There are a lot of other things that are forfeited, correct? I'm talking about the Animal Cruelty Act. The Animal Cruelty Act. Right. But if we talk about forfeitures in general, I mean, forfeitures aren't there. You may look at them and say that they're punishment, but there are other purposes behind the Forfeiture Act, correct? Well, I believe the primary purpose of forfeiture, as constituted by Lopretti, is punitive. It is the purpose of forfeiture is to deter, disincentivize, to punish, and to secondarily, it does have a revenue impact. But the primary purpose is to punish conduct. And we talked about those two Eighth Amendment cases where you had excessivity. One of them, as I mentioned, involved an individual who boarded a plane with $357,000 in cash when he was supposed to report any transaction over $10,000, and he had to forfeit that entire amount. And the court said that's excessive punishment. And they use the cruel and unusual punishment clause. So under that You're not submitting that there's cruel and unusual punishment in this particular case? No, I'm arguing a different case. But I'm saying that just because there was the Eighth Amendment applied to forfeiture, it is a punishment under constitutional law. Actually, I think I've almost exhausted my argument. Well, there's probably one other thing to address, and that is, why isn't all this forfeited? Because it wasn't raised right at the court. Correct. And I would concede that. Okay. Defense counsel tried this as if the standard of the burden of proof was reasonable doubt. He didn't introduce any evidence. He cross-examined very skillfully the State's lone expert. But we argue that this holds within the plain error doctrine. And we cited case law, and we set forth the requirements for the application of the plain error doctrine. This involves, in our view, a fundamental right that should be addressed on appeal and should not be subject to the appellate waiver doctrine. The plain error rule should apply because it affected a substantial right, a right to a jury trial, a right to not be deprived of property without due process of law. The concept of a statute written in a punitive form but allowing for proof by proponents of the evidence in trial by judge only seriously affects the integrity, fairness of the judicial proceeding. And we've argued for the reasons set forth that this is an erroneous application of the law. It's true. I don't have a Supreme Court case before me that says that on forfeiture, there is a right to a jury trial. That issue is open. However, when you read the cases together, the trend of cases, the trend is very much in that direction. It's certainly anomalous to argue that forfeiture first qualifies as a punishment under the Eighth Amendment but doesn't qualify as a punishment under the Sixth. And Apprendi is very clear that anything that enhances punishment, and that exact language is used, must be submitted to a jury. And so the intent here, I believe, of the General Assembly was not just to protect animals because that isn't how they wrote the statute. It was to punish and disincentivize treatment of animals that it felt was subpar. Thank you, sir. Okay, thank you. You'll have an opportunity in rebuttal. Oh, thank you. I'm sorry. Did I nudge something off? Okay. Counsel? I'm sorry. I would call you by your name, but I didn't get the yellow sheet with the name on it. Perhaps you can refresh. Our numbers? Your name, I'm sorry, for the record. Dan Kegel, K-E-G-L. Thank you, sir. May it please the Court. Good morning, Your Honors. Good morning, Counsel. My name is Dan Kegel, and I represent the people of the state of Illinois, the appellee in this matter. Mr. Kegel, you indicated that the issue here should not be addressed, that it was forfeited by not being raised below. How about the Forest Preserve of DuPage County? Doesn't that state that if an issue of law is fully briefed, the public interest favors considering it on appeal? Your Honor, to be honest, I'm not familiar with that case. What I looked at here is when you're dealing with waiver issues in the civil context, the Supreme Court has held that it's really supposed to be extremely limited, and unless there's been an extreme wrong committed at the trial court level, that if it's been waived, it's not right for appeal. But you would recognize it's not absolute, and besides that forfeiture is a limitation on the parties, not on the court, correct? Yeah, that's correct. I understand that waiver issue is not subtle. So you wouldn't be shocked if we reached the issue, would you? No, not at all. And I think that's where the state's case is the strongest with respect to the actual merits of the case. What about the core of this argument? I mean, it has some intuitive appeal, if you will. You're saying, you know, there's an additional punishment here. You can end up in the penitentiary, you can end up in jail, and now your property is also being seized. Doesn't that have a compelling appeal that maybe there should be a jury trial in this? Well, as Your Honor has mentioned, this is separate from the criminal proceedings. Forfeiture proceedings are separate. This court itself has come to that conclusion with respect to forfeitures in previous cases. There was an estoppel issue, whether or not you could try someone or continue with a forfeiture case, even though they had been acquitted of the underlying criminal offense. And this court had stated, you can't. It's separate. There's nothing preventing you from going forward with your forfeiture. There are two different burdens. You have two different burdens. Yeah, that's correct. That's one of the reasons, because there is a preponderance burden here. So if you were to envision a holding in this case, what would it be? Well, I think that this court would be bound to follow the Supreme Court precedent in Libretti. Through Libretti, it is expressly clear that forfeiture proceedings do not apply to – or the Sixth Amendment protections as expressed in the plenty do not apply to forfeiture They rejected the argument that Libretti was implicitly overruled. The defendant claimed that his rights were violated because the judge, rather than the jury, determined the amount of his forfeiture. And there, he argued the same exact argument here that the appellant does, that these cases of Apprendi and Southern Union should be read together to extend the jury trial right to forfeitures. What about this argument of form over substance? Are we saying that the legislature could draft the statute, call it a forfeiture proceeding, that could provide a penalty of not only property forfeiture, but in the same act impose fines or incarceration, and that would pass constitutional muster because it's labeled a forfeiture proceeding? I think it goes beyond how it's labeled. I think you've got to look to the legislative intent. But what counsel failed to do is divide the statute up. Section 3.04 has two forfeiture provisions. There's Section A, which this was filed under, which is a pretrial forfeiture, which the goal is to prevent further suffering for the animals and get them the proper vet care, get them a good house. The second section is Section C, which has that language that says, in addition to any other penalty provided by law. That was not an original part of the section. That was added by a later public act. So by the fact that they added that, in addition to the original Section A, which was there, shows that they intended to add this new forfeiture that was meant to be a punishment. It's different from the forfeiture in the present case, the pretrial forfeiture, with the sole purpose being remedial. Well, when I asked your opposing counsel that question, he said he didn't think so, I believe was his answer. But I'm going to ask you, can't the civil forfeiture proceeding under this act proceed totally independent? Does somebody have to be charged with the crime? Or could the State decide to forfeit the animals and not prosecute them? I think the statute calls for it to be filed with the criminal case number. So there does have to be a filing of the criminal case for this to be referred to. Could it be non-encrusted, or could it be drafted? It could. Because as this Court has said, and as the Supreme Court has said, the forfeiture actions are separate and distinct from the underlying criminal case that may have brought them about. So the person theoretically under statute could end up only losing the property and not face ultimately any criminal penalties, correct? That is correct. The Ninth Circuit, in reaching its conclusion that Libretti stole the case under good law, it noted that the Supreme Court has cautioned courts of appeals against concluding that recent cases have, by implication, overruled the earlier precedent. The Supreme Court itself has stated that if the precedent of the court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the court of appeals should follow the case which directly controls, leaving the court the prerogative of overruling its own decisions. So in this case, we should leave it to the Supreme Court to overrule Libretti. They had the opportunity to do that in Apprendi and Southern Union, and they did, because it's still the law of the land. Since that time, two other cases, albeit district court cases, have come out since Southern Union, and they've also reached the same opinion in Wilkes that the two cases read together do not overrule Libretti. Are we bound by federal law in this area? In other words, Kent, isn't the state under constitutional criminal procedures, wouldn't the state have more expansive protections? Potentially. The Supreme Court sets the minimum standards, but in Illinois, couldn't we give greater protections? I think so, Your Honor. I haven't directly addressed, I haven't found any on-point Illinois case law dealing with this, but the bottom line is the Supreme Court's still the law of the land, and the Ninth Circuit, the Second Circuit, Fruchter, they are unruly. Fruchter is a little different, though, isn't it? I mean, you're talking about, you don't have, you have an open-ended sentencing in Fruchter that we don't have in the state courts, correct? Correct, Your Honor. And I think that's really one of the reasons why this is inapplicable. Because even if Libretti happened to be not still binding law, which it is, courts have distinguished forfeitures from the criminal sentencing schemes in Apprendi and other cases because of the fact that it's not a determinate scheme, it's open-ended. See, Apprendi stands for the proposition that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and not proved beyond reasonable doubt. So when there is no statutory maximum, courts have held, as is the case with forfeitures, there is no Apprendi violation because you're not going above and beyond that cap. What's the statutory maximum in this case? On the forfeitures, there is no statutory maximum. With respect to the criminal case? Underlying offense. I believe it's a class 4 felony, so we're looking at one to three years of incarceration and up to a $25,000 crime. So does the forfeiture sentence above and beyond that? Or punish above and beyond that? I would say no because, as the courts have held, that there are two separate distinct proceedings, the criminal proceeding and then the forfeiture proceeding. Another reasoning is that unlike some of the cases cited by counsel in this brief and Austin, those cases were kind of squeezed into the punishment analysis because of the purpose behind the forfeiture. In those cases, the Supreme Court in Austin expressly stated, the reason we're having this forfeiture here is because drug crimes are not, we're not doing enough to deter them. There's still a financial benefit for the convicted person. So they enacted the forfeiture provision as a way to provide a really strong penalty. Here, we don't have that. The history behind Section A, that we did the forfeiture under, was not designed to punish and deter people from abusing their animals and horses. It was designed so they could be given the proper vet care. It promotes the care and the protection. Exactly. Are you just making that inference? Well, I think it's, I think you can be, it can be inferred, yes, from the way the General Assembly constructed the statute. Was it the Shape 1 case that mentioned that too? I'm not familiar with that case, Your Honor. But just by the very fact that they enacted Section C, subsequent to already having a forfeiture provision, shows that it was there for another purpose. If Section A was there to punish people, they wouldn't have needed to add the second forfeiture provision. You mean Section C? Section C, yeah. They wouldn't need it. And if you look at the legislative history, they added Section C at a time when they were they increased some of the underlying penalties were only allowed to be misdemeanors. They enhanced some of them to felonies. They changed the title of the section from, to add the word penalties in the title. So when they were doing that, they were really designing that separate section at the penalty, not this Section A, the pretrial section that we're working under. Did you find any case law with respect to animals in the basis behind the Act here in order to promote the care and treatment of animals or any Illinois cases? Your Honor, I was unable to find any Illinois cases that were directly on point with the Cares for Animals Act. It's not a very commonly litigated area from what I can tell based on my research. Since really one of the major issues here is whether Libretti is still good law, of those cases that have addressed that issue, which seem to be all federal cases, which of those do you think is the strongest case for your position? I think the strongest one would probably be Willis. And because it's strongest for this case right here because it directly contradicts the appellant's argument and it says why it is incorrect. But I think for the most part when you look through them, all the reasoning is very similar. These cases, it's from the first, second, third, fourth, fifth, sixth, seventh, eleventh, and ninth all said Libretti is still good law. And they all, they say it very quickly. These aren't very long opinions. They look at, they do the research, they do some analysis, and then they see that Libretti is still good law. They see the other circuits have determined that it's still good law, and they go ahead and follow it. So your argument, reduced to the simplest terms, is Libretti is still good law. None of the other cases have attempted to overrule it. Libretti thoroughly applies in the defense of the forfeiture and the discussion. Is that basically what you're saying? That's correct, Your Honor. He's got to get around Libretti and you're saying he can't. He cannot get around Libretti at this point. The circuits are not going to do it. And then the Third Circuit in the United States v. Leahy stated this. They said, we are not free to ignore the Supreme Court's holding in Libretti, nor do we possess the authority to declare that the Supreme Court has implicitly overruled one of its own decisions. The Third Circuit, they were uncomfortable with the idea of overruling the Supreme Court. They're unwilling to accept the idea that Libretti has been overruled by Apprendi or even by Southern Union being brought along with it. Well, we can probably take judicial notice, too, of the fact that the Ninth Circuit is horse country. And it's probably the most liberal of all the federal circuits, right? Yeah. I'm unfamiliar with the horse status of the Ninth Circuit. Think of California in open space. Montana. Yeah. Idaho. Wyoming. And the county as well. It's a very horse-friendly area. So in going on to the argument that even if Libretti hadn't overruled, because there's no statutory maximum, it's also inapplicable to the present case. The Seventh Circuit agrees with this proposition in two separate cases. In the United States v. Messina in 2004, the court stated that criminal forfeiture provisions do not include a statutory maximum. They're open-ended in that all property representing proceeds of illegal activity are subject to forfeiture. Therefore, we conclude that Apprendi does not apply to forfeiture proceedings. In the United States v. Vera, it's stated that determining the forfeitable proceeds of an offense does not come within Apprendi's rule because there is no prescribed statutory maximum. And no risk that the defendant has been convicted de facto of a more serious offense. In that case, the Seventh Circuit also had mentioned that the standard here is above and beyond accepted to be preponderance. It said forfeiture has long been a civil remedy as well as a criminal sanction handled by a preponderance standard and usually by a judge rather than a jury. In this case, the defendant received all the process that was due. She had a written complaint with the petition filed in court. She was able to have a hearing in front of a judge. She had the opportunity to present evidence. She was able to cross-examine witnesses. The rules of evidence were followed, and she had that preponderance standard. The procedure here was way more in-depth than the traditional sentencing hearing that Apprendi may have been looking at, which can be very brief. They allow hearsay. So in this case, the defendant was afforded all the process that was due. In conclusion, if your honors have no further questions. No questions, gentlemen. Every federal circuit to consider the issue has found that Libretti has not been overruled. The First, Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth, and Eleventh Circuits, I'm not sure where the time fell because I didn't see a case, have all joined the Ninth Circuit in refusing to apply Apprendi to forfeitures. The trial court's judgment should therefore be affirmed because the overwhelming majority of courts have decided that Libretti is still good law. Libretti stated that writing to a jury verdict on forfeitability does not fall within the Sixth Amendment's constitutional protections. Additionally, even if this court were to choose to go against the body of case law, Apprendi doesn't apply here because there's not a statutory maximum. And therefore, it is separate and distinct from the Apprendi line of cases. And for those reasons, the people request that the trial court's judgment forfeiture be affirmed. Thank you. Thank you. Once again, may it please the court. Councils for the state stated that he places primary reliance on Wilkes. Wilkes is a Ninth Circuit case, so it is persuasive precedent and not controlling precedent. And it is not a particularly well-reasoned decision. In Wilkes, there were three issues on appeal. Newly discovered evidence granted immunity to the state. And then finally, and almost parenthetically, the issue of whether the Sixth Amendment required a jury trial on the issue of forfeiture. Wilkes contains almost no discussion. They only cite grudgingly the Southern Union case and really don't contain any nuanced, developed, reasoned discussion of the principles set forth in that case. What they do is they pull out what appears to be almost dicta from a case that's extremely distinguishable, Agostini v. Felton. Agostini was an excessive entanglements case. It went up to the Supreme Court once. Supreme Court ruled. U.S. Supreme Court sent the case back down, remanded for further proceedings. And then subsequently, lower circuit court held that another ruling by the Supreme Court obviated or booted those proceedings. And on the second time it was up before the court, the Agostini court said, no, we'll decide if we booted something, all right? If you read the Wilkes decision as broadly as the government and the state here want you to read it, then it would appear that every Supreme Court holding could almost be relegated to dicta. The simple fact of the matter is that when the Supreme Court makes an important pronouncement on constitutional doctrine, they should be listened to. And the fact of the matter is that Wilkes did not deconstruct in any way the defense position, did not parse the case law on this issue, and did not engage in a recent analysis. Let me ask you this. As we have conceded, or at least it's very vaguely clear, in a pending subpoena, there was an additional sanction imposed beyond the jury's best finding that increased the punishment in that proceeding. Yes. Where in the forfeiture proceeding itself, other than the seizure of the property, what factual finding was made by anyone that increased the sanction or the punishment beyond the seizure of the property? It is only the seizure of the property, the deprivation of the property. So where, for a pending subpoena to apply, it applies if there's some additional fact that increases the sanction or punishment. Where is it? Well, that apprendee talked about enhancement, okay, of a punishment based upon some enhancing factor. But in that proceeding? But in Southern Union, they talked about calculation of a fine based upon the number of days, all right? So I suppose the number of days would be the enhancing factor subject to a jury trial. Well, isn't it that the probation department in that case was the one who was making that additional calculation, not even a judge and certainly not a jury? Correct. That's exactly what happened there. But still, the fact remains that Section 3.04 of the Animal Cruelty Act, as Counsel pointed out, subsection C was added later, is punitive in nature. I mean, it imposes a punishment. This is in addition to any other punishment. Yeah, but isn't it clear what the purpose is behind this act? Is the purpose behind this act to punish the animal owner or is the purpose behind the act to protect the animal? As I said in my first argument before this Court, I would not be here if the statute were worded differently. We don't have a finding of a clear and present danger to the animals. In fact, the animals were appeared to be in good health because they were in state custody and recovered. If, in fact, there were a summary proceeding before a fact finder, not a jury, discussing on an emergency basis an emergency requiring immediate seizure of the animals, I wouldn't be making this argument. I'm making the argument because of how the statute is worded. Did anyone check the legislative history of this statutory enactment? I did not research the legislative history. I relied on the text. To summarize, this case is a slippery slope. You have a statute that talks about, in addition to other punishment, a finding by a preponderance of the evidence, not by a jury but by a judge, and it simply flies in the face of Apprendi and Southern Union. Unless there are any further questions, I'll conclude my presentation. Thank you so much. Gentlemen, thank you so much for your arguments. Madam, thank you for coming in today. We appreciate your time. We will review the arguments. A decision will be rendered in due course. The Court is adjourned for the day. Thank you very much.